NOT FOR PUBLICATION                                                    (Doc. No. 7)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                              :
ALBERT BRANGAN,                               :
                                              :
          PLAINTIFF,                          :
                                              :          Civil No. 11-5470 (RBK/KMW)
     v.                                       :
                                              :          **OPINION**
BALL PLASTIC CONTAINER                        :
CORPORATION, BALL                             :
CORPORATION, AMCOR LIMITED,                   :
AMCOR RIGID PLASTICS USA, INC.,               :
AMCOR PACKAGING DISTRIBUTION,                 :
JOHN DOE(S) individually (names being         :
fictitious), ABC PARTNERSHIP, and             :
XYZ CORPORATION,                              :
                                              :
          Defendants.                         :
_____      :

**KUGLER**, United States District Judge:

This matter arises out of Albert Brangan's ("Plaintiff") termination from employment at a

manufacturing plant in Delran, New Jersey (the "Plant"). Presently before the Court is the

motion of Ball Plastic Container Corporation, Ball Corporation, Amcor Limited, Amcor Rigid

Plastics USA, Inc., and Amcor Packaging Distribution (collectively "Defendants") to dismiss

claims brought by Plaintiff. The Amended Complaint alleges a violation of the Conscientious

Employee Protection Act ("CEPA"), N.J. Stat. Ann. §34:19-1 et seq., common law claims for

wrongful discharge, a violation of the Employer Requiring Lie Detector Test Statute, N.J. Stat.

Ann. §2C:40A-1, negligent infliction of emotional distress, and intentional infliction of

emotional distress. For the reasons expressed below, Defendants' motion is granted as to all

counts.

## I.   BACKGROUND

On July 13, 2009, Plaintiff Albert Brangan was hired by Ball Plastic Container Corporation and/or Ball Corporation to work at the Plant. Am. Compl. at ¶3. The following January, Plaintiff and 12 to 15 other employees were suspended during an investigation to determine  the source of foreign debris discovered in the manufactured plastic bottles. As part of the investigation, Plaintiff was requested, and consented, to submit to a lie detector test to determine Plaintiff's connection to the foreign debris. Am. Compl. at ¶6. Plaintiff resumed work in May of 2010. On the 25th of May, Plaintiff noticed a "small piece of yellow plastic in a bottle." Am. Compl. at ¶8. Determining that the debris represented a "hazard to public health and safety," Plaintiff reported the debris to his trainer, the mechanic on duty at the time, and the Plant manager. Am. Compl. at ¶¶8-9. The production line was closed down and Plaintiff was questioned as to the source of the debris, sent home prior to the end of his shift, and then suspended. Am. Compl. at ¶¶ 9-10. Though Plaintiff was scheduled to work on May 28, 29, and 30, 2010, Plaintiff was unable to because of the suspension. Am. Compl. at ¶11. On June 2, 2010, Plaintiff was terminated, without being provided a reason for the termination. Am. Compl. at ¶ 12.

Plaintiff alleges that Defendants' decision to terminate his employment violated CEPA and constituted two separate claims of wrongful discharge. Am. Compl. at ¶¶14-22. Plaintiff also alleges that Defendants violated the Employer Requiring Lie Detector Test Statute when they requested and administered a polygraph as a condition of Plaintiff's continued employment. Am. Compl. at ¶¶ 23-25. Plaintiff alleges Defendants' conduct was unreasonable, that such conduct created a substantial risk of causing Plaintiff distress, and thus constituted negligent infliction of

emotional distress. Am. Compl. at ¶¶ 26-28. Plaintiff further alleges that Defendants' conduct

was extreme and outrageous, that such conduct was carried out with the knowledge that it would

likely cause Plaintiff distress, and thus constituted intentional infliction of emotional distress.

Am. Compl. at ¶¶ 29-31.

## II.   STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure

to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts

accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)

(quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a

complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to

"state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a three-part analysis is needed. Santiago v. Warminster

Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a

plaintiff must plead to state a claim." Id. (quoting Iqbal, 129 S. Ct. at 1947). Second, the court

should identify allegations that, "because they are no more than conclusions, are not entitled to

the assumption of truth." Id. (quoting Iqbal, 129 S. Ct. at 1950). Finally, "where there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 129 S. Ct. at 1950). This

plausibility determination is a "context specific task that requires the reviewing court to draw on

its judicial experience and common sense." Iqbal, 129 S. Ct. at 1949.  A complaint cannot

survive where a court can only infer that a claim is merely possible rather than plausible. Id.

## III. DISCUSSION

### A. Plaintiff's CEPA Claim

Defendants argue that Plaintiff's CEPA claim must be dismissed because the Complaint did not contain sufficient allegations of the elements of a prima facie case, specifically the first and fourth elements. Defendants allege that though Plaintiff states there was a violation of a clear mandate of public policy, the Complaint is silent regarding why Plaintiff believed the presence of the foreign debris represented a hazard to public safety, how the presence of the debris constituted conduct on the part of the Defendants, and how such policy was violated. Thus, Defendants argue that the Complaint fails to sufficiently plead that Plaintiff had a reasonable belief that Defendants' conduct violated a clear mandate of public policy, the first element of the prima facie case. Def.'s Br. In Support of Mot. to Dismiss Compl. at 7-8. Additionally, Defendants argue that Plaintiff alleged no facts connecting his alleged whistle-blowing activity to his termination. As the Complaint is devoid of any such factual connection, Defendants argue that Plaintiff failed to sufficiently allege that the whistle-blowing activity caused the adverse employment action, the fourth element of the prima facie case. Def.'s Br. In Support of Mot. to Dismiss Compl. at 8.

Plaintiff argues that at the pleading stage, Plaintiff need not establish the elements of the prima facie case but only allege facts that raise a reasonable expectation that discovery will reveal evidence of the elements. Pl.'s Br. In Opp'n to Def.'s Mot. to Dismiss the Compl. at 7. As such, Plaintiff argues that sufficient facts have been alleged to demonstrate that discovery will reveal that the debris "represented a hazard to public health and safety" and thus satisfy the first element of the prima facie case. Additionally, Plaintiff argues that the Complaint pled sufficient

facts to support a plausible claim that Plaintiff's termination was related to the protected activity

and that discovery will support the allegations. Pl.'s Br. In Opp'n to Def.'s Mot. to Dismiss the

Compl. at 8.

In relevant part, CEPA prohibits an employer from taking "[r]etaliatory action" against

an employee who "[d]iscloses, or threatens to disclose to a supervisor . . .an activity, policy, or

practice of the employer . . .that the employee reasonably believes: is in violation of a law, rule,

or regulation promulgated pursuant to law . . . ." N.J. Stat. Ann. §34:19-3(a)(1). Additionally,

CEPA prohibits an employer from  "[r]etaliatory action" against an employee who "objects to, or

refuses to participate in any activity, policy, or practice which the employee reasonable believes:

. . . is incompatible with a clear mandate of public policy . . . ." Assembly Labor Committee

Statement, No. 661, L.1989, c. 220 (discussing N.J. Stat. Ann. §34:19-3(c)(3)).

CEPA is remedial legislation, intended to "encourage employees to speak up about

unsafe working conditions that violate the law or public policy . . . ." Donelson v. DuPont

Chambers Works, 20 A.3d 384, 391 (N.J. 2011); see Barratt v. Cushman & Wakefield of N.J.,

Inc.,675 A.2d 1094, 109 (N.J. 1996). As such, CEPA should be construed liberally to achieve its

goal. Id. (citing Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003)).

The court's initial task is to "tak[e] note of the elements [plaintiff] must plead" in order to

state a claim. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); see Iqbal 129

S.Ct. at 1947-48 (identifying "[t]he factors necessary to establish a Bivens violation" in order to

determine what "the plaintiff must plead and prove"). In order to assert a prima facie case for

retaliation under CEPA, a plaintiff must allege (1) he or she reasonably believed that the

employer's conduct was violating a law, rule, regulation promulgated pursuant to law, or a clear

mandate of public policy; (2) he or she objected to the conduct; (3) an adverse employment

action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 404 (3d Cir. 2007) (citing Dzwonar, 828 A.2d at 900); Kolb v. Burns, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999).

The Court finds that the Complaint does not allege facts sufficient to constitute a plausible CEPA claim. As to the first element, that the employee reasonably believed that the employer's conduct was violating a law, rule, regulation promulgated pursuant to law, or a clear mandate of public policy, Plaintiff avers that Defendants violated a clear mandate of public policy. Pl.'s Br. In Opp'n to Def.'s Mot. to Dismiss the Compl. at 8. Specifically, Plaintiff alleges the foreign debris found in a bottle represented a "hazard to public health and safety." Am. Compl. at ¶ 8. Defendants argue that Plaintiff failed to plead sufficient facts to support that assertion. Def.'s Br. In Support of Mot. to Dismiss Compl. at 5-7.

The New Jersey Supreme Court has held that a plaintiff need not show that his or her employer actually violated that law or a clear mandate of public policy. Dzwonar, 828 A.2d at 900; Gerard v. Camden County Health Servs. Ctr., 792 A.2d 494, 497-98 (N.J. Super. Ct. App. Div. 2002), certif. denied, 803 A.2d 636 (N.J. 2002). Instead, the employee need just show that he or she "reasonably believed" that to be the case, setting forth facts that "would support an objectively reasonable belief that a violation has occurred." Dzwonar, 828 A.2d at, 900-01; Estate of Roach v. TRW, Inc., 754 A.2d 544, 552 (N.J. 2000).

However, a plaintiff under subsection c(3) of the statute does need to "articulate the existence of a clear mandate of public policy which the employer's conduct violates." Kolb 727 A.2d at 530; Mehlman v. Mobil Oil Corp., 707 A.2d 1012, 1012 (N.J. 1998). The New Jersey Supreme Court recently discussed the requirements to assert a claim of 'clear mandate', holding

6

that "under Section 3c(3), there should be a high degree of public certitude in respect of acceptable versus unacceptable conduct." Maw v. Advanced Clinical Communications, Inc., 846 A.2d 604, 607 (N.J. 2004). The Maw Court went on to note that prior CEPA decisions have "reasoned similarly when discussing Section 3c(3) claims." Maw, 846 A.2d at 607.

The Court must first identify the clear mandate of public policy that a plaintiff believed was violated. Dzwonar, 828 A.2d at 902. Plaintiff asserts that the small piece of "yellow plastic in a bottle . . . represented a hazard to public health and safety." Am. Compl. at ¶8. The Court notes that the Complaint contains no averments as to the particular mandate of public policy, how the presence of the yellow debris represented a violation of that public policy, nor how Defendants' conduct violated that public policy.[1] The New Jersey Supreme Court has held that if a court is unable to identify an applicable public policy, the court "can and should enter judgment for a defendant when no such law or policy is forthcoming." Dzwonar, 828 A.2d at 901. As such, the Court finds that Plaintiff has not identified the clear mandate of public policy, and thus failed to establish the first element of the prima facie case.

As to the fourth element, the existence of a causal connection between the whistle-blowing activity and the adverse employment action, the Complaint alleges that Plaintiff was sent home prior to the end of his shift after reporting the presence of the yellow plastic, that Plaintiff was then suspended, and that Plaintiff was terminated days later without being provided a reason for termination. Am. Compl. at ¶¶8-12. As such, Plaintiff contends that the Complaint contains a sufficiently factual proximate relationship between the protected activity and

---

[1]In its brief, Plaintiff contends that the bottle that contained the yellow plastic was to be used for a liquid beverage, that it would be available for human consumption, and that discovery will reveal the nature of the bottle. Pl.'s Br. In Opp'n to Def.'s Mot. to Dismiss the Compl. at 8. However, this allegation is not on the face of the Complaint and thus cannot be considered.

Plaintiff's termination. Pl.'s Br. In Opp'n to Def.'s Mot. to Dismiss the Compl. at 8.

The causal connection requirement can be satisfied by "inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action." Roach, 754 A.2d at 612. The New Jersey Supreme Court has held that the temporal proximity between protected conduct and the adverse employment action is "one circumstance that may support an inference of a causal connection." Maimone v. City of Atl. City, 903 A.2d 1055, 1064 (N.J. 2006); see Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139 (N.J. Super. Ct. App. Div. 1995). Plaintiff pled that an adverse employment action (the suspension) occurred immediately after Plaintiff reported the presence of the yellow plastic and that Plaintiff remained suspended until a week later, at which point Plaintiff's employment was terminated. As such, Plaintiff has pled sufficient facts to meet the requirement of the fourth element of the prima facie case.

Though Plaintiff pled sufficient facts to establish the fourth element of a CEPA prima facie case, Plaintiff has not pled sufficient facts to establish the first element of the prima facie case. As such, Plaintiff has failed to sufficiently plead a CEPA prima facie case.

**B. Plaintiff's Wrongful Discharge Claims**

**i. CEPA Waiver**

In relevant part, CEPA provides that "noting in this act shall be deemed to diminish the rights, privileges, or remedies of any employee . . . except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law." N.J. Stat. Ann. §34:19-8.

The parties seem to agree that Plaintiff cannot recover for the alleged retaliatory

termination under both CEPA and the common law. The parties disagree as to when the choice between the two options needs to be made. Defendants argue that the decision has already been made; as Plaintiff has filed a CEPA claim, he has thus waived his right to assert a substantially related common law claim for the same conduct. Plaintiff contends that neither of his common law retaliatory discharge claims is barred by his CEPA claim because plaintiffs should have an opportunity to complete discovery before electing remedies.

The New Jersey Supreme Court has held that when interpreting a statute, those that depart from the common law should be read narrowly, as should exceptions to a statutory scheme. Young v. Schering Corp., 660 A.2d 1153, 1158 (N.J. 1995). Additionally, the New Jersey Supreme Court has also held that a literal interpretation of a statutory provision should be avoided if such an interpretation would be inconsistent with the purpose of the statute. Id. As the waiver provision is a statutory constriction of common-law remedies, an exception to the general CEPA statute, and intended to protect a former employee from a retaliatory discharge, the waiver should be construed narrowly. Id. At 1159-1160.

In the Young case, the New Jersey Supreme Court recognized that the CEPA waiver provision "precludes a plaintiff from pursuing both statutory and common-law retaliatory discharge causes of action," specifically because they "represent multiple or duplicative claims." Id. at 1160. Though the waiver provision states that it takes effect upon the institution of a CEPA claim, the Young Court did not define what the term "institution" meant. Instead, the Court specifically stated that the question of when the statute would deem the election of remedies to be made was "not decided in this case." Id. at 1161. The Young Court also commented, in dicta, that the term institution "may be susceptible of meaning something other than the filing of a complaint." Id. at 1153.

The New Jersey Superior Court, Appellate Division, recently held that in the CEPA context, "before electing remedies, a plaintiff should have an opportunity to complete discovery. Only after gaining access to all of the facts will a plaintiff be in a position to make a knowing and meaningful election." Maw v. Advanced Clinical Communications, Inc., 820 A.2d 105, 118 (N.J. Super. Ct. App. Div. 2003) rev'd on other grounds, 846 A.2d 604 (N.J. 2004). In making its decision, the Maw Court noted the opinion in Young as instructive, specifically that "[t]he meaning of 'institution of an action' could conceivably contemplate an election of remedies with restrictions in which the election is not considered to have been made until discovery is complete . . . ." (quoting Young, 660 A.2d at 1153).

This understanding of the CEPA waiver has recently been followed in Rubin v. Sultan Healthcare, Inc., CIV. A. 08-6175(SRC), 2009 WL 1372272 at *4 (D.N.J. May 15, 2009). Though the Rubin Court's finding is not binding, this Court finds it to be informative. Looking to both the Maw and the Rubin Courts, this Court finds that Plaintiff has not waived his common law claim by filing a CEPA claim as the decision between a CEPA and a common law course of action is to be made after the completion of discovery.

Though Plaintiff cannot ultimately proceed under both claims, Plaintiff does not have to make that election at this point in the proceedings. However, as explained below, the Court grants Defendants' motion to dismiss Counts II and III of the Complaint.

### ii. Multiple Common Law Wrongful Discharge Claims

In the Complaint, Plaintiff pleads two separate counts of common law wrongful discharge. Am. Compl. at ¶¶17-22. Specifically, the Second Count of the Complaint is a "general allegation of wrongful discharge", which encompasses all of the Defendants' "empoyment policies, their prior actions against Plaintiff, and the ultimate termination on June 2, 2010." Pl.'s

10

Br. In Opp'n to Def.'s Mot. to Dismiss the Compl. at 8. The Third Count of the Complaint,

Plaintiff's <u>Pierce</u> claim, is a claim "for retaliatory discharge in violation of a clear mandate of

public policy." Pl.'s Br. In Opp'n to Def.'s Mot. to Dismiss the Compl. at 8-9.

Defendants allege there is only one type of common law wrongful discharge claim, that

of <u>Pierce</u>. As such, Defendants argue that Plaintiff has filed two identical common law wrongful

discharge claims.

Traditionally, employers have been free to terminate the employment of at-will

employees with or without cause. <u>Pierce v. Ortho Pharm. Corp.</u>, 417 A.2d 505, 508-09 (N.J.

1980). However, over thirty years ago, the New Jersey Supreme Court held that an at-will

employee may have a cause of action if the employee was discharged "contrary to a clear

mandate of public policy." <u>Id</u>. at 512. The <u>Pierce</u> court was silent as to any other basis upon

which an at-will employee could assert a cause of action against his or her employer. Plaintiff's

assertion that there exists another common law exception to an employer's right to terminate an

at-will employee can be found nowhere in the <u>Pierce</u> opinion. As Plaintiff has failed to identify

any source of law supporting his assertion, the Court finds that no such common law right exists.

As Count II asserts either a common law cause of action that does not exist, or a cause of

action identical to Count III, Count II does not state a cognizable claim and is dismissed.

### iii. Plaintiff's <u>Pierce</u> Claim

A <u>Pierce</u> common law wrongful discharge claim allows an at-will employee to sue under

a wrongful termination claim when his or her discharge was contrary to a clear mandate of public

policy. To establish a case for common law wrongful discharge, the employee must identify the

clear mandate of public policy and that the discharge itself was in violation of that public policy.

<u>Tartaglia v. UBS PaineWebber Inc.</u>, 961 A.2d 1167, 1183 (N.J. 2008); <u>MacDougall v. Weichert</u>,

677 A.2d 162, 167 (N.J. 1996). Plaintiff has failed to plead sufficient facts to establish a <u>Pierce</u> wrongful discharge claim.

As to the first requirement, that the employee must identify the clear mandate of public policy, the analysis is similar to that of the first prong of a CEPA claim. <u>See</u> <u>Mehlman v. Mobil Oil Corp.</u>, 707 A.2d 1000, 1012 (N.J. 1998). The Court finds that the Complaint is silent as to the particular mandate of public policy. Public policy sources can include "legislation[,] administrative rules, regulations or decisions[,] . . . judicial decisions[, and] [i]n certain instances, a professional code of ethics." <u>Pierce</u>, 417 A.2d at 512. Absent legislation, the courts are to define the cause of action in "case-by-case determinations." <u>Id.</u>

Plaintiff states that the yellow plastic represented a hazard to public health and safety. However, Plaintiff fails to cite or reference any of the potential public policy sources. If an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment. <u>Pierce</u>, 417 A.2d at 513. As the Complaint contains no averments as to the particular mandate of public policy, <u>see</u> discussion <u>supra</u> Part III.A, the Court finds that Plaintiff has failed to meet the burden of the first requirement.

The second requirement, that the discharge itself was in violation of that public policy, requires "an expression by the employee of a disagreement with a corporate policy, directive, or decision based on a clear mandate of public policy derived from one of the sources we identified in <u>Pierce</u>." <u>Tartaglia</u>, 921 A.2d at 1183. Also required is a "sufficient expression" of that disagreement "to support the conclusion that the resulting discharge violates the mandate of public policy and is wrongful." <u>Id.</u> An actual or threatened complaint to an external agency or body is not required, though it would "ordinarily be sufficient means of expression." <u>Id.</u> A direct complaint to senior corporate management would also most likely suffice. <u>Id.</u> On the other hand,

a "passing remark to co-workers" will not, nor will a complaint to an immediate supervisor. Id. at 1182-3.

Plaintiff states that upon discovering the presence of the yellow plastic, he immediately reported it to his trainer, to the mechanic on duty at the time, and to the Plant manager. Am. Compl. at ¶¶8-9. As a complaint to an immediate supervisor is not enough to qualify as a "sufficient expression" of disagreement, Plaintiff's report to his trainer and, potentially, to the mechanic on duty, is not enough to satisfy the 'sufficient expression of disagreement' burden. Even though the Complaint is silent as to the chain of command, construing the facts in a light most favorable to the Plaintiff, the report to the Plant manager is enough to satisfy Plaintiff's burden at the motion to dismiss stage.

Though Plaintiff has pled sufficient facts to establish the second requirement of a Pierce wrongful discharge claim, Plaintiff has not plead sufficient facts to establish the first requirement. As such, Plaintiff has failed to sufficiently plead a Pierce wrongful discharge claim.

### C. Plaintiff's Lie Detector Claim

The Employer Requiring Lie Detector Test Statute, N.J. Stat. Ann. §2C:40A-1, is part of the New Jersey Criminal Code. As it stands, the Act provides no avenue for a private remedy and this Court declines to find that one exists. To the extent that the Plaintiff has alleged "emotional distress, loss of sleep and appetite, depression, embarrassment and anxiety" as a result of the test, a request to have the Court create common law to address these claims is misplaced.

### D. Plaintiff's Negligent Infliction of Emotional Distress Claim

Defendants argue that Plaintiff's claim for negligent infliction of emotional distress is barred by the New Jersey Workers' Compensation Act ("WCA"), N.J. Stat. Ann. §34:15-8, as WCA is the exclusive remedy for negligent employment activites. Plaintiff disagrees, asserting

that because this claim arises out of Plaintiff's termination, it does not arise out of his

employment and thus is not covered under WCA.

The Court finds Plaintiff's argument unpersuasive. WCA bars all employment-related

claims that "aris[e] out of and in the course of his employment," N.J. Stat. Ann. § 34:15-1,

except those that result from an intentional wrong. see N.J. Stat. Ann. §34:15-8. The Complaint,

in alleging negligent infliction of emotional distress, states that Defendants are liable for "their

conduct, as set forth herein and including the termination of the Plaintiff . . ." Am. Comp. at ¶27.

A basic reading of Plaintiff's statement finds that the claim is based upon the events leading up

to his termination, as well as the termination itself. As the events leading up to Plaintiff's

termination arise out of and in the course of his employment, WCA applies.

WCA is the exclusive remedy for an employer's negligence. see Smith v. Exxon Mobil

Corp., 374 F. Supp. 2d 406, 424 (D.N.J. 2005); Ditzel v. Univ. of Med. & Dentistry, 962 F.Supp.

595, 608 (D.N.J.1997). As such, Plaintiff's negligent infliction of emotional distress claim is

barred by WCA.

### E. Plaintiff's Intentional Infliction of Emotional Distress Claim

Defendants contend that Plaintiff's intentional infliction of emotional distress claim must

be dismissed as the Plaintiff fails to allege sufficient facts regarding Defendants outrageous and

atrocious conduct. Plaintiff argues that the claim is based on Defendants' administration of a

polygraph test. Because administering a polygraph test as a condition of employment is against

the law, such behavior is outrageous enough to meet the conduct threshold. Additionally,

Plaintiff argues that whether or not Defendants' conduct is outrageous is a question for the jury.

To prove a claim for intentional infliction of emotional distress, a plaintiff must show:

(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and

14

outrageous; (3) the defendant's actions proximately caused plaintiff's emotional distress; and (4)

plaintiff's emotional distress was "so severe that no reasonable man could be expected to endure

it." Buckley v. Trenton Sav. Fund Soc., 544 A.2d 857, 863 (N.J. 1988) (citing Restatement

(Second) of Torts § 46 cmt. d (1965)). The New Jersey Supreme Court has held that to be

extreme and outrageous, a plaintiff must show that the conduct is "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community." Id. (quoting Restatement (Second)

of Torts, § 46 cmt. d (1965)). New Jersey courts hold that it is "extremely rare to find conduct in

the employment context that rise[s] to the level of outrageousness necessary." Griffin v. Tops

Appliance City, Inc., 766 A.2d 292, 297 (N.J. Super. Ct. App. Div. 2001) (quoting Cox v.

Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir.1988), cert. denied, 498 U.S. 811 (1990)).

Accepting as true all of Plaintiff's allegations and construing the facts in a light most

favorable to Plaintiff, this Court finds that Defendant's offering of the lie detector test alone does

not constitute intentional infliction of emotional distress.[2] Plaintiff simply states that

"Defendants' conduct was extreme and outrageous and was carried out with the knowledge that

such conduct would likely cause Plaintiff severe emotional distress." Am. Compl. at ¶30. Both

the Complaint and the Brief are silent regarding Defendants' specific intent to cause the

emotional distress, Defendants' knowledge that Plaintiff was under emotional distress when they

---

[2] Defendants point to an inconsistency in language between Plaintiff's Amended Complaint, where he alleges that he was requested to submit to a lie detector test, and Plaintiff's Brief, where he alleges that he was required to submit to the lie detector test. However, the Employer Requesting Lie Detector Test statute applies to "any person who as an employer shall influence, request or require an employee or prospective employee to take or submit to a lie detector test . . ." N.J. Stat. Ann. §2C:40A-1 (emphasis added). Thus, regardless of whether Defendants requested or required Plaintiff to take a lie detector test, the conduct still falls within the purview of the statute.

administered the lie detector test, and facts relating to the severity of Plaintiff's distress. Though

Plaintiff does not need to prove these factors at this time, such fact do need to be alleged.

Plaintiff does state that Defendants' administration of the lie detector test, and its timing,

constitutes outrageous conduct. However, even assuming this to be the case, it alone is

insufficient as none of the other intentional infliction of emotional distress factors have been

pled.

**IV. CONCLUSION**

For the reasons discussed above, Defendant's motion to dismiss is **GRANTED** as to all

Counts. An appropriate order shall be entered today.

Dated:  4/17/12                                                      /s/ Robert B. Kugler
                                                                     ROBERT B. KUGLER
                                                                     United States District Judge